| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | <u>**NOT FOR PUBLICATION**</u> |

-----------------------------------------------------------------------x

In re:

NORTHWEST AIRLINES CORPORATION, *et al.*,

                              Reorganized Debtors.

Chapter 11

Case No. 05-17930 (ALG)

-----------------------------------------------------------------------x

NCC KEY COMPANY, BATCL-1991-II, INC., and
WELLS FARGO BANK NORTHWEST, N.A., solely
in its capacity as owner trustee,

                              Plaintiffs,

        -against-

U.S. BANK NATIONAL ASSOCIATION, solely in its
capacity as indenture trustee, and NORTHWEST
AIRLINES, INC.,

                              Defendants.

Adv. Pro. No. 06-01566 (ALG)

-----------------------------------------------------------------------x

## **MEMORANDUM OF OPINION**

A P P E A R A N C E S:

STORCH AMINI & MUNVES PC
Counsel for Plaintiffs NCC Key Company, BATCL-1991-II, Inc.,
 and Wells Fargo Bank Northwest N.A.
  By:  Steven G. Storch, Esq.
       Bijan Amini, Esq.
       Bonnie A. Tucker, Esq.
Two Grand Central Tower
25th Floor
140 East 45th Street
New York, New York 10017

EDWARDS ANGELL PALMER & DODGE LLP
Counsel for Defendant U.S. Bank National Association
  By:   Richard Hiersteiner, Esq.
        Jeanne P. Darcey, Esq.
        Francis C. Morrissey, Esq.
        Joseph P. Mingolla, Esq.
111 Huntington Avenue
Boston, Massachusetts 02199-7613

CADWALADER, WICKERSHAM & TAFT, LLP
Counsel for Defendant Northwest Airlines, Inc.
  By:   Nathan A. Haynes, Esq.
One World Financial Center
New York, New York 10281


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of U.S. Bank National Association (the "Debt Trustee") to dismiss certain claims of NCC Key Company ("NCC"), BATCL-1991-II Inc. ("BATCL," and together with NCC, the "Owner Participants") and Wells Fargo Bank ("Wells Fargo," and together with NCC and BATCL, the "Plaintiffs") in Counts I and II of the First Amended Complaint (the "Complaint") filed in the above-referenced adversary proceeding. The Debt Trustee alleges that the claims were the subject of a previously contested matter that was fully and conclusively resolved pursuant to a stipulated order entered by this Court.[1]

For the reasons set forth below, the motion to dismiss is denied.

**Facts**

Prior to the chapter 11 case of the above-referenced debtors and reorganized debtors (collectively, the "Debtors"), one of the Debtors, Northwest Airlines, Inc. ("NWA"), entered into financing arrangements with respect to five Boeing 757 aircraft (the "757 Aircraft") and one Boeing 747 aircraft (the "747 Aircraft," and together with the 757 Aircraft, the "Aircraft"). The

---

[1] While it did not formally join in the Motion, Northwest Airlines, Inc., one of the Debtors, which is also named as a defendant, has stated that it supports the Motion.

2

financing involved the acquisition of each of the Aircraft by one of six separate owner trusts (the "Trusts"), which leased the Aircraft to NWA under long-term leases (the "Leases"). NCC is the beneficiary of the five trusts that held legal title to the 757 Aircraft, and BATCL is the beneficiary of the trust that held title to the 747 Aircraft. Plaintiff Wells Fargo serves as the owner trustee of the Trusts, subject to the direction of NCC and BATCL.

NWA's acquisition of the Aircraft was financed through the issuance of public debt (the "Acquisition Financing") to lenders who are hereafter called the "Aircraft Creditors," and the proceeds were advanced to the Trusts for the purchase of the Aircraft. The debt was secured, *inter alia*, by first liens and security interests in and assignments of the Leases of the Aircraft. U.S. Bank, the Debt Trustee, acts as the indenture trustee and collateral trustee for the Aircraft Creditors under the trust indentures that were created pursuant to the Acquisition Financing (the "Indentures").

On January 20, 2006, NWA filed a motion (the "Restructuring Motion") for approval of a "Restructuring of Financing for Aircraft Subject to Northwest 1996-1 EETC Transaction, including Rejection of Existing Leases and Entry into New Leases or Mortgage Financings, with respect to Aircraft Subject to Northwest 1996-1 EETC Transaction." The Debt Trustee describes the term sheet attached to the Restructuring Motion (the "Term Sheet") as contemplating the following relief:

> (1) the [Debt] Trustee would foreclose the liens securing the Aircraft Financing; (2) NWA would reject the existing Leases for the Aircraft (which it already had authority to do); and (3) NWA would enter into new leases for the Aircraft (at substantially lower rates) with 'an owner or liquidating trust to be established by the relevant Indenture Trustee (whether as secured party in possession or otherwise, the Subordination Agent or other person designated by either of them.)' (Motion to Dismiss, p. 4.)

3

As the Plaintiffs note, the Term Sheet provided both for the rejection of the Leases and NWA's authority to enter into restructured leases either with the Trusts continuing as lessors or with the debtholders or their trustee or assignee acting as owner and as lessor after a foreclosure sale. (Opp'n to Mot, p. 4-5).

On February 13, 2006, Plaintiffs filed an objection (the "Objection") to the Restructuring Motion, arguing that if the transactions contemplated by the Term Sheet went forward without the Owner Participants' consent, the "anti-squeeze-out" provisions contained in § 4.04 of the Indentures (the "Anti-Squeeze-Out Provisions") would be violated.[2] It is the Plaintiffs' position, as alleged in their Complaint, that under the Anti-Squeeze-Out Provisions of the Indentures, any restructuring transaction implemented without the consent of the Owner Participants could not allow NWA to retain a leasehold interest in the Aircraft and "squeeze out" the Owner Participants by means of a pre-arranged lease agreed to by the debt and the airline lessee. (First Am. Compl., ¶ 17).[3]

On February 15, 2006, the Restructuring Motion again came before the Court. The record indicates that the Court was informed on the record only that the Plaintiffs had withdrawn their Objection and that it had been agreed that certain language would be included in the order

---

[2] Section 4.04(a) of the Indentures provides, in part, as follows:

> Anything in this Trust Indenture to the contrary notwithstanding, the Indenture Trustee shall not be entitled to exercise any remedy hereunder as a result of an Event of Default which arises solely by reason of one or more events or circumstances which constitute a Lease Event of Default unless the Indenture Trustee as security assignee of the Owner Trustee shall have exercised or concurrently be exercising one or more of the remedies provided for in Section 15 of the Lease to terminate the Lease (so long as the Aircraft is not subsequently re-leased to Lessee or an Affiliate thereof) or take possession and/or sell the Aircraft . . .

[3] The Debt Trustee and NWA, on the other hand, appear to contend that § 4.04 permitted them to "take possession and/or sell the Aircraft . . ." and to enter any lease thereafter, even one with NWA.

4

approving the Restructuring Motion (the "Order").[4]  This language, contained in ¶ 9 of the Order, reads, in relevant part:

> NCC Key Company and BATCL-1991-II, Inc. as owner participants, and Wells Fargo Bank, N.A., as owner trustee . . . have filed an objection to the Motion and the approval of the Term Sheet . . . .  The Objection is withdrawn upon the condition that, and it is hereby ordered that, nothing herein or in the Term Sheet shall constitute or be deemed an amendment to the Current Indentures or other transaction documents to which any of the objectors is a party or guarantees of which any of the Objectors is expressly designated as beneficiary with respect to N539US, N540US, N541 US, N542US, N543US, and N662US [the Aircraft] or a waiver or modification of the rights or claims of the Objectors thereunder. (Order, Feb. 16, 2006, ¶ 9).

In addition, the Order approved all transactions contemplated or embodied in the Term Sheet "in their entirety" and authorized the parties to "implement such agreements and transactions, including rejection by Northwest Airlines of existing leases with respect to the Aircraft . . . and entry into new leases (and mortgage financings) as provided in the Term Sheet." (Order, Feb. 16, 2006, ¶2).  Paragraph 3 of the Order provided

> The failure specifically to include any particular provision of the Term Sheet in this Order shall not diminish or impair the enforceability of such provisions, it being the intent of the Court that the transactions contemplated by the Term Sheet, including, without limitation, the Debtors' entry into New Leases for the Aircraft, be approved in their entirety. (Order, Feb. 16, 2006, ¶ 3).

The Order was entered on February 16, 2006, and no appeal was taken.

On May 25, 2006, the Debt Trustee began foreclosure procedures relating to the Aircraft and provided notice to the Plaintiffs of its intent to sell the Aircraft at a foreclosure sale.  In response, the Plaintiffs filed the Complaint alleging, *inter alia*, that the Debt Trustee had breached the Anti-Squeeze-Out Provisions of the Indentures by proposing to foreclose its liens on the Aircraft and re-lease the Aircraft to NWA on the terms of restructured leases. (First Am. Compl., ¶ 30).  Plaintiffs' motion for a preliminary injunction to prevent the foreclosure was

---

[4] The Court was also informed that another objection by a third-party had been resolved.  This objection has no relevance to the instant dispute.

5

denied, primarily on the ground that they had not alleged irreparable injury. A foreclosure auction was held on June 29, 2006. Neither Plaintiffs nor any third party appeared to bid for the Aircraft, and the Debt Trustee, as secured party, submitted a credit bid and foreclosed its liens on the Aircraft. The Aircraft were subsequently leased to the Debtors. Plaintiffs thereafter filed a further amended complaint (the "Amended Complaint") alleging, *inter alia*, that the foreclosure procedures and notice were unreasonable and not in accord with applicable law, as well as their earlier claims that the Defendants had violated the Anti-Squeeze-Out Provisions of § 4.04 of the Indentures.

The Debt Trustee now moves to dismiss Plaintiffs' claims in the First Amended Complaint relating to the Anti-Squeeze-Out Provisions on the ground they were fully and conclusively resolved by the stipulated Order. (Mot. to Dismiss, p. 5). Specifically, it contends that the terms of the restructuring, which the Order approved "in their entirety," provided for the possible foreclosure of the liens on the Aircraft and their prospective lease back to the Debtors, and that the Plaintiffs cannot now obtain relief that would contradict the Order. (Mot. to Dismiss, p. 4). Plaintiffs respond that ¶ 9 of the Order preserved their rights to sue Defendants under the Anti-Squeeze-Out Provisions, as well as to pursue the other claims raised in the Amended Complaint. There is no dispute that the Amended Complaint seeks damages from the Defendants with respect to other aspects of the Refinancing – for example, that the foreclosure sale was not conducted in accordance with commercially reasonable terms. The only issue on this Motion relates to the survival of Plaintiffs' Anti-Squeeze-Out Claims.

## Discussion

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule 7012(b), is "designed to test the legal sufficiency of the complaint, and thus does not require the

Court to examine the evidence at issue." *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996); *see also, Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984); *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 58 F.Supp.2d 228, 236 (S.D.N.Y. 1999).

On a motion to dismiss for failure to state a claim, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). A court can also take judicial notice of pleadings filed in court to establish the fact of litigation and of the contents of public documents as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991), citing Fed. R. Evid. 201(b)(2); *see also, Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 27 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992).

While a complaint does not need to include detailed factual allegations, the plaintiff must incorporate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also Tellabs*, 127 S. Ct. at 2509 ("[C]ourts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true.").

7

In its recent decision in *Bell Atlantic*, the Supreme Court specifically questioned the standard first set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. After consideration of *Bell Atlantic*, the Second Circuit Court of Appeals has stated that "the [Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

While *res judicata* is usually an affirmative defense, "when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). A motion to dismiss can similarly be granted on the basis of collateral estoppel. *See Sassower v. Abrams*, 833 F. Supp. 253, 264 n. 18 (S.D.N.Y. 1993).

<u>Prior Adjudication on the Merits</u>

The Debt Trustee argues that the Order is entitled to preclusive effect that necessarily bars relitigation of the Anti-Squeeze-Out Claims, while the Plaintiffs counter that ¶ 9 of the Order reserved their rights with respect to such claims. The Debt Trustee primarily relies on the doctrine of *res judicata*, or claim preclusion, under which a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *EDP Medical Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007), quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000). *Res judicata* will bar later litigation if a prior decision "was (1) a final judgment on the merits, (2) by a court of

8

competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Id.*, quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985). Consent judgments are generally recognized as having *res judicata* effect, due to the fact that "a consent judgment is an exercise of judicial power . . . that is entitled to appropriate respect and because of the policy favoring finality of judgments." *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987) (internal citations omitted.) Some bankruptcy court orders have been held to be final judgments entitled to *res judicata* treatment. *See Silverman v. Tracar (In re American Preferred Prescription, Inc.)*, 255 F.3d 87, 92 (2d Cir. 2001).

Plaintiffs' response is that the reservation of rights in ¶ 9 of the Order preserved their Anti-Squeeze-Out Claims. "Under a generally accepted exception to the *res judicata* doctrine, a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action." *See D&K Properties Crystal Lake v. Mutual Life Insurance Co. of New York*, 112 F.3d 257, 259-60 (7th Cir. 1997); *see also, Apparel Art Int'l, Inc. v. Amertex Enterprises Ltd.*, 48 F.3d 576, 586 (1st Cir. 1995); *In re Energy Cooperative, Inc.*, 814 F.2d 1226, 1233 (7th Cir. 1987); *Friedman v. Ottley*, 1988 U.S. Dist. Lexis 10441, at *10 (S.D.N.Y. 1988); *Restatement (Second) of Judgments* §§ 13(b), 26(1)(b) (1982). To effectively reserve rights and avoid preclusion, however, a reservation must be both "express, as in writing, and express, as in specifically identified." *D&K Properties Crystal Lake*, 112 F.3d at 261. Courts first look for express language in an agreement to determine whether parties intended to reserve certain rights and, if necessary, may then consider the "circumstances" around an agreement. "[E]ven if words were insufficient to reserve the right . . . the circumstances under which the assent was given" should be considered. *Globe & Rutgers Fire*

9

*Ins. Co. v. U.S.*, 105 F.2d 160, 162-63 (2d Cir. 1939). While the scope of a consent decree must be "discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it . . . a court also may consider, as it would in construing a contract, normal aids to construction such as 'the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree." *U.S. v. Int'l Brotherhood of Teamsters*, 998 F.2d 1101, 1106 (2d Cir. 1993).

Moreover, in determining the effect of consent orders, courts, in appropriate cases, apply the same principles that govern the construction of contracts. As the Second Circuit has stated, "[c]onsent decrees, while they are judicial decrees subject to enforcement by the court, nonetheless are agreements between parties to litigation that 'should be construed basically as contracts.'" *U.S. v. Int'l Brotherhood of Teamsters*, 998 F.2d at 1106, quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236-37 (1975). When interpreting a contract, the main objective is to "give effect to the intent of the contracting parties 'as revealed by the language they chose to use.'" *Sayers v. Rochester Telephone Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993), quoting *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). However, a motion to dismiss for failure to state a claim cannot be granted if the relevant agreement is ambiguous. *See Teachers Insurance and Annuity Ass'n of America v. Criimi Mae Services Ltd. Partnership*, 2007 U.S Dist. Lexis 28279, at *18-*19 (S.D.N.Y. March 20, 2007); *Peregrine Fixed Income Ltd. v. JP Morgan Chase Bank*, 2006 U.S. Dist. Lexis 8766, at *2 (S.D.N.Y. Jan. 26, 2006). "'[W]hen the language of a contract is ambiguous, its construction presents a question of fact,' which . . . precludes summary dismissal." *Bank of Am. Corp. v. Braga Lemgruber*, 385 F. Supp. 2d 200, 226 (S.D.N.Y. 2005),

quoting *Jackson Heights Medical Group, P.C., v. Complex Corp.*, 222 A.D.2d 409, 411, 634 N.Y.S.2d 721, 722 (2d Dep't 1995). The terms of a contract will be deemed ambiguous if "they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996), quoting *Seiden Assocs.*, 959 F.2d at 428.

Examining, first, the language of the Order and, second, the circumstances under which it was entered, leads to the conclusion that the reservation of rights in the Order is ambiguous.

The key provision for purposes of this Motion is the clause that nothing in the Order or in the Term Sheet would constitute or be deemed "a waiver or modification of the rights or claims" of the Plaintiffs under the Indentures or any of the other transaction documents. Giving the terms "waiver" and "claims" a broad construction, this clause can be read to reserve for the Plaintiffs the "claim" that the Court's approval of the Order and Term Sheet did not divest Plaintiffs of their argument that the Term Sheet violated the Anti-Squeeze Out Provision of the Indentures and to seek damages therefor. On the other hand, a narrow construction of the terms "waiver" and "claims" a narrow construction leads to the result that the Plaintiffs reserved only those rights that can be enforced without giving rise to a potential conflict with the Term Sheet. For example, the transaction documents contained various rights held by the Plaintiffs that were unquestionably not affected by and not even remotely inconsistent with the Term Sheet. The reservation of rights in the Order obviously protected these rights and claims, but it is not clear whether it was intended to do more and reserve rights that are arguably inconsistent with certain of the provisions of the Term Sheet.

11

The principal reason offered by the Debt Trustee why there should be a narrow construction of the critical clause is that the Order approved, without qualification and "in their entirety," a Term Sheet "and the agreements, releases, waivers and transactions contemplated or embodied therein." (Order, ¶ 2.) One of the transactions embodied in the Term Sheet was the agreement of the Debtors to enter into a new lease for each aircraft, including the requirement that

> Each New lease will be between Northwest and, at the Aircraft Creditor's election, one of (i) an owner or liquidating trust to be established by the relevant Indenture Trustee (whether as a secured party in possession or otherwise), the Subordination Agent or other person designated by either of them or (ii) subject to the agreement of the relevant owner participant listed on Exhibit B with respect to such Aircraft (an "Owner Participant"), the related current lessor listed on Exhibit B (any such counterparty under a New Lease, together with its respective successors and assigns, a "Lessor"). (Term Sheet, pp. 2-3.)

There is force to the argument that the reservation of rights in ¶ 9 was inconsistent with the approval of the Term Sheet in its entirety, including the right of election given to the Debt Trustee (or to the Aircraft Creditors it represented). Similarly, there is force to the Debt Trustee's contention that the Court should be guided by several black letter principles of contract construction: that a contract – or an order – should be construed so as to give effect to every provision thereof; that a contract is construed in its entirety, and all provisions must be read together; and that a contract cannot be interpreted in a way that defeats its purpose. *See Fulton Cogeneration Assoc. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 99 (2d Cir. 1996); *Commercial Union Ins. Co. v. Flagship Marine Services*, 190 F.3d 26, 31 (2d Cir. 1999); *Lee v. Marvel Enterprises, Inc.*, 386 F. Supp. 2d 235, 244 (S.D.N.Y. 2005).

On the other hand, the reservation of rights in ¶ 9 was deemed to be effective notwithstanding anything to the contrary in the Order "or in the Term Sheet." The Debt Trustee could have decided that the Aircraft Creditors bore little risk that the transaction contemplated by

12

the Term Sheet could give rise to a colorable "claim" by the Plaintiffs of breach of the Anti-Squeeze-Out Provisions. Although the Debt Trustee was obligated to enter into a new lease with NWA, it had the right to choose whether to enter into such lease before or after a foreclosure proceeding. The Debt Trustee could have concluded that it might be able to enter into a settlement with the Plaintiffs that permitted it to avoid the costs of a foreclosure and enter into a new lease directly, in accordance with subclause (i) quoted on the immediately preceding page.[5] Alternatively, the Debt Trustee might have concluded that if a settlement could not be reached with the Plaintiffs, the risk was minimal that a Court would find that the Term Sheet violated the Anti-Squeeze Out Provisions if the Debt Trustee first took possession of and/or sold the Aircraft, on the premise that such actions are expressly permitted under § 4.04 of the Indentures.[6] Under these circumstances the Debt Trustee and NWA could have agreed to the Order notwithstanding a broad reservation of rights to the Plaintiffs.

In any event, the construction of ¶ 9 of the Order cannot be determined on this motion to dismiss. Moreover, an expansion of the record would be particularly useful in view of the circumstances under which the parties entered into the Order and the reservation of "claims" contained in ¶ 9 thereof. The effect of the Anti-Squeeze-Out Provisions on the transactions proposed had been the subject of an earlier objection by the Plaintiffs and was a known, seemingly contentious "claim." It seems unlikely that the parties did not deal with it in some fashion when the objection was withdrawn and the reservation of rights language added to the Order. A record needs to be made as to the substance of any direct communications between the

---

[5] Plaintiffs make the reverse argument when they contend that they would have been motivated to withdraw their objection but still retain their rights under the Anti-Squeeze-Out Provisions by the possibility that they would be able to settle and enter into a new agreement with the Debt Trustee under clause (i).

[6] The Court emphasizes that it is not deciding whether the Term Sheet violated the Anti-Squeeze-Out Provisions. The parties have reserved this issue for further briefing and argument, if necessary. The Court is merely attempting to judge, based on the present incomplete record, the possible motivations of the parties in agreeing to the terms of the Order.

Plaintiffs and the Debt Trustee as well as any communications through an intermediary such as NWA.

Jurisdiction

Plaintiffs' make one further claim that can be easily dealt with. They impugn their own Complaint and suggest that this Court is without jurisdiction to adjudicate the Plaintiffs' Anti-Squeeze-Out Claims brought in their pleading against the Debt Trustee, a non-debtor third party. Plaintiffs forget that one of the Debtors is a party to this proceeding as well as the fact that they consented to entry of the Order. A bankruptcy court has jurisdiction to construe the provisions of its own order, even after the entry of a confirmation order and even if the only parties to the dispute are non-debtors. *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002). The Court thus has subject matter jurisdiction of this case. Moreover, that jurisdiction is core jurisdiction. *Petrie*, 304 F.3d at 229-30.[7] In any event, whether or not claims are within the bankruptcy court's "core" jurisdiction has no bearing on the preclusive effect of a court's prior order. *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 984 F.2d 869, 874 (2d Cir. 1991). Nor is the Order here lacking in force because it was entered in a contested matter, as Plaintiffs also argue. The current litigation is embodied in an adversary proceeding that affords Plaintiffs all the procedural rights to which they may be entitled.

---

[7] It is also established that failure to object to the Bankruptcy Court's adjudication of a dispute constitutes consent to adjudication before the Bankruptcy Court for purposes of 28 U.S.C. § 157(c)(2). *See Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear)*, 834 F.2d 1134, 1137-38 (2d Cir. 1987). The Court's jurisdiction is also core as a result of Plaintiffs' consent to entry of the Order.

14

## Conclusion

The Debt Trustee's motion to dismiss the Anti-Squeeze-Out Claims is denied. Plaintiffs' suggestion of lack of subject matter jurisdiction is rejected. Plaintiffs' counsel is to settle an order on five days' notice.

Dated: New York, New York
September 14, 2007

>                      */s/ Allan L. Gropper*
>                      UNITED STATES BANKRUPTCY JUDGE